**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BRAY ENTERPRISES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 4:23-CV-0039-P |
| | § | |
| **MOUNT VERNON FIRE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW**, Bray Enterprises, LLC., Plaintiff herein, and file this, its First Amended Complaint against Mount Vernon Fire Insurance Company, A Member of United States Liability Insurance Group, Defendant herein, pursuant to the Order [ECF. 7] entered on January 13, 2023, and would respectfully show unto the Court the following:

### I. PARTIES

1.1.    Plaintiff, Bray Enterprises, LLC., (hereinafter, "Plaintiff" and/or "Bray") is a Texas Limited Liability Company that owns the insured property located in Parker County, Texas.

1.2.    Defendant, Mount Vernon Fire Insurance Company, a Member of United States Liability Insurance Group (hereinafter, "Defendant" and/or "USLI") is a foreign insurance company licensed to conduct business in the State of Texas. Defendant has been properly served and has appeared herein through counsel.

## II.   JURISDICTION AND VENUE

2.1.   The United States District Court has jurisdiction over this suit pursuant to 28 U.S.C. §1332(a)(1) as the dispute arises wholly between citizens of different states with the matter in controversy exceeding the sum or value of $75,000.00, exclusive of interest and costs.

2.2.   Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the property at issue is situated in this district, and under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III.   CONDITIONS PRECEDENT

3.1.   All conditions precedent to Plaintiff's recovery have been performed, have occurred, have been waived, or are excused.

## IV.   FACTS

4.1.   USLI sold insurance policy number CP 2600068D (hereinafter, the "Policy") to named insured Bray Enterprises, LLC., to insure the property located at 101 First Street E, Springtown, Texas 76082 (hereinafter, the "Property").[1]

4.2.   The Policy was to be effective from August 27, 2019 to August 27, 2020.[2]

4.3.   On or about May 7, 2020, a severe windstorm and hail event (hereinafter, the "Storm") caused widespread damage to properties located throughout North Texas.

4.4.   The Storm produced 60mph winds and hail up to two (2) inches in diameter, resulting in direct physical damage to Bray's Property.

4.5.   On or about December 10, 2020, after a heavy rainstorm brought the damage to its attention, Bray reported the damage to USLI pursuant to the Policy.

---

[1] *See* Exhibit 1, *Uncertified Copy of Policy No. CP 2600068D*, attached hereto and incorporated as if fully set forth herein. Note, this is not a certified copy of the Policy, as, despite repeated requests, USLI has refused to provide a certified copy of the Policy to Plaintiff.

[2] *Id.*

4.6.    USLI acknowledged the reported loss and assigned claim number K155985 to the loss.

4.7.    USLI retained an independent adjuster with Alacrity Solutions (hereinafter, "Alacrity") to investigate the Claim and document the damage to the Property. On or about December 4, 2020, Alacrity estimator Don Coon (hereinafter, "Mr. Coon"), conducted his initial inspection of the Property.

4.8.    On or about December 23, 2020, Mr. Coon provided Bray with his estimate of damages via email.

4.9.    Although Mr. Coon noted damage to the Property's roof, siding, and air conditioning unit, his estimate of damages cited a replacement cost value of only $9,221.01. Alacrity's estimate of damages was also provided to Bray by USLI claims examiner Sean McKernan (hereinafter, "Mr. McKernan") via email on that same date.

4.10.    On or about December 29, 2020, Bray contracted with Cheston Selz (hereinafter, "Selz") to serve as its public insurance adjuster with respect to the Claim.

4.11.    On January 11, 2021, Selz sent correspondence to Mr. McKernan via email, placing USLI on notice of his representation of Bray.

4.12.    In his notice, Selz further requested a certified copy of the Policy, a copy of any estimates completed by or on behalf of USLI, all claim photographs, all correspondence between USLI and Bray or any other third party regarding the Claim, and a complete copy of USLI's underwriting file.

4.13.    When Selz did not receive a response regarding his request for documents, a follow up email was sent to Mr. McKernan on January 22, 2021.

4.14.   Selz also provided notice of his representation of Bray to Mr. Coon on January 27, 2021.

4.15.   Upon his receipt of Selz's notice, Mr. Coon requested a reinspection of the Property, which was ultimately scheduled to occur on January 29, 2021.

4.16.   On or about January 13, 2021, Selz inspected the Property, documenting the damages sustained in preparation for creating his estimate of repairs necessary to bring the Property to its pre-loss condition. Selz ultimately determining a loss amount of $232,645.20.

4.17.   At the reinspection on January 29, 2021, Mr. Coon identified hail damage to the Property and verbally extended coverage for said damage, stating that he would be updating his estimate to include the electric vent cover, specifically for hail damage, the interior west wall of the Property, and portions of the damaged air conditioning system.

4.18.   Mr. Coon further advised that he would review the other items identified in Selz's estimate and would speak with his superior as to the elastomeric coating on the Property's metal roof, upon which he verbally confirmed the presence of hail damage.

4.19.   On or about March 11, 2021, after receiving no further communication from Mr. Coon or Mr. McKernan, Selz followed up with Mr. Coon via email inquiring as to the status of the revised estimate.

4.20.   On March 16, 2021, Mr. Coon finally provided a response to Selz via email. In his March 16th email, Mr. Coon completely reversed his position, stating that he would not be making any revisions to his initial estimate and further advised that Mr. McKernan had hired an engineer with Rimkus Consulting Group, Inc. (hereinafter, "Rimkus") to inspect the Property on USLI's behalf.

4.21.    Selz immediately provided a detailed response addressing the inaccuracies and misstatements made by Mr. Coon in his March 16th email; Selz's response was ultimately ignored by Mr. Coon.

4.22.    On March 17, 2021, Mr. Coon provided Selz with Rimkus engineer Henry J. Yang's (hereinafter, "Mr. Yang") curriculum vitae and email correspondence between Rimkus and Mr. Coon dated March 15, 2021.

4.23.    However, when Selz inquired as to Mr. Yang's qualifications and notified Rimkus that he intended to videotape the inspection, Rimkus refused to proceed with the reinspection.

4.24.    Following Rimkus' refusal, on or about April 8, 2021, Mr. Coon sent an email to Selz attaching a curriculum vitae for a second structural engineer, Michael Stenstrom (hereinafter, "Mr. Stenstrom"), and advised that Mr. Stenstrom would be reaching out to schedule his inspection.

4.25.    Mr. Stenstrom emailed Selz on April 13, 2021, requesting availability to conduct his inspection to occur on April 22nd or April 23rd.

4.26.    Upon receipt of Mr. Stenstrom's email, Selz reached out to Mr. Stenstrom via telephone to inquire as to his qualifications to conduct the inspection and the scope provided to him by Mr. Coon.

4.27.    In that conversation, Mr. Stenstrom agreed with Selz's assertion that Mr. Stenstrom was not qualified to complete the scope provided to him by USLI.

4.28.    Upon completion of the phone conversation, Selz sent an email to Mr. Stenstrom, Mr. Coon, and Mr. McKernan documenting the statements made by Mr. Stenstrom and following up on his previous requests for the proposed scope of inspection provided to Mr. Yang and Mr. Stenstrom.

4.29.    When Selz failed to receive a response from Mr. Stenstrom, Mr. Coon, or Mr. McKernan, Selz sent an email to Mr. Stenstrom on May 3, 2021, inquiring as to whether Mr. Stenstrom had received a response from Mr. Coon or Mr. McKernan and whether Mr. Stenstrom still intended to conduct a reinspection of the Property.

4.30.    As a result of USLI's continued delay, on May 11, 2021, Selz filed a complaint with the Texas Department of Insurance (hereinafter, "TDI"), against USLI and Alacrity, citing USLI and Alacrity's unfair claims settlement practices, as well as USLI's failure to remit payment of the undisputed amounts pursuant to the Texas Insurance Code.

4.31.    Mr. Stenstrom's ultimately completed his inspection of the Property on May 27, 2021.

4.32.    However, Mr. Stenstrom's Wind/Hail Damage Evaluation (hereinafter, "SSI Report"), erroneously mis-labeled "Water Damage Evaluation" on its cover page, was not provided to Selz until two (2) months later, via email from Mr. Coon on July 27, 2021.

4.33.    Upon review of the SSI Report, on August 2, 2021, Selz sent a detailed email to Mr. Coon, seeking clarification of USLI's position with regard to the assertions contained in the SSI Report.

4.34.    When Selz failed to receive a response, a follow up email was sent on August 25, 2021.

4.35.    On August 30, 2021, Selz received an email from Mr. McKernan, attaching written correspondence partially denying coverage for the damage sustained to Bray's Property, which closed by condescendingly stating:

> We regret that we are unable to be of service to you in this instance but trust that you can understand our position.

4.36.   On September 30, 2021, Selz sent a detailed response to Mr. McKernan via email, citing numerous deficiencies in the SSI Report.

4.37.   Mr. McKernan responded to Selz's email on October 1, 2021, stating that USLI would continue to stand by its coverage decision:

> Please be advised that we are standing by the coverage opinion expressed in my August 30th coverage letter

4.38.   On or about February 9, 2022, Bray contracted with CASA Engineering (hereinafter, "CASA") to conduct an evaluation and assessment of the Property.

4.39.   CASA engineer David Day (hereinafter, "Mr. Day") conducted a thorough inspection of the property and reviewed additional relevant documentation to prepare his Roof Damage Assessment Report (hereinafter, "CASA Report").

4.40.   The CASA Report found the hail damage to be "pervasive and obvious", ultimately concluding:

> **Conclusions**
>
> Based on my observations made at the 101 E. 1st Street property during my site inspection, there is substantial evidence of hail damage to the roof. The hail data, with a recorded hailstorm in the vicinity, also support the claim that hail damage occurred.
>
> All roof panels have dents and there are deflected ribs. The roof panels need to be replaced. New coatings cannot be placed over coatings that are breached or have water below them. Coatings cannot be ground off metal panels without damaging the panels. The metal panels need to be replaced.

4.41.   On or about March 16, 2022, Selz provided the CASA Report as well as his estimate of damages to Mr. McKernan via email.

4.42.   Mr. McKernan responded via email on March 28, 2022, advising that USLI was in receipt of the documents provided by Selz and would be in touch once USLI's engineer completed his review of same.

4.43.   On April 8, 2022, Selz followed up with Mr. McKernan via email, inquiring as to the status of USLI's review.

4.44.    Strangely, Selz received an automated response from USLI representative Jim Ziff, stating that he would be out of the office until April 13th.

4.45.    On April 12, 2022, Selz received an email from USLI property claims examiner Chris Soley (hereinafter, "Mr. Soley") advising that Mr. Soley would be taking over the handling of the Claim from Mr. McKernan.

4.46.    Mr. Soley requested that Selz resubmit the CASA Report and estimate of damages previously provided to Mr. McKernan a month prior, on March 16, 2022.

4.47.    Selz promptly resubmitted the documents per Mr. Soley's request via email on April 22, 2022, and requested that Mr. Soley provide confirmation of receipt.

4.48.    After Mr. Soley failed to respond, Selz was forced to follow up on via email on April 25, 2022.

4.49.    Mr. Soley finally confirmed receipt of the resubmission of the CASA Report and estimate of damages on April 26, 2022.

4.50.    On May 17, 2022, after *yet again* failing to receive any additional communication from USLI, Selz sent an email to Mr. Soley inquiring as to the status of the Claim.

4.51.    On May 19, 2022, Mr. Soley sent an email to Selz, advising that USLI had concluded its investigation into the Claim and rendered its coverage decision, stating:

Unfortunately, we are unable to afford additional coverage in this instance.

4.52.    Attached to the May 19th email, Mr. Soley also provided Selz with written correspondence yet again denying coverage for the damage sustained to Bray's Property, as well as a supplement to the SSI Report written by Mr. Stenstrom.

4.53.    On July 15, 2022, Selz sent an email to Mr. Soley, attaching CASA's Amended Report.

4.54.    The Amended Report contained only one minor correction due to a typographical error in the initial CASA Report, which incorrectly identified the date of loss as May 7, 2021, as opposed to May 7, 2020.

4.55.    Mr. Soley confirmed receipt via email on July 21, 2022.

4.56.    Mr. Soley responded to Selz on July 29, 2022, confirming the sole minor correction to CASA's Report, and concluding his email reiterating USLI's previous position, stating:

> At this time, USLI's position remains unchanged and we will not afford any additional coverage in this matter.

4.57.    Plaintiff sent pre-suit notice and demand to USLI pursuant to the Texas Business & Commerce Code, commonly referred to as the Texas Deceptive Trade Practices Act (hereinafter, "DTPA"),[3] Chapters 541 and 542A of the Texas Insurance Code,[4] and related provisions of the Texas Administrative Code[5] on or about October 4, 2022.

4.58.    Plaintiff's pre-suit notice and demand was accompanied by extensive exhibits in support of each of the above stated facts.

4.59.    To date, USLI continues to refuse to cover the restoration of the Property to its pre-loss condition, as required pursuant to the Policy.

4.60.    As a result of USLI's refusal to change its position regarding Plaintiff's Claim despite being notified of the impossibility of the minimal suggested scope of repair, continued delay and disinterest in resolving the Claim, and its refusal to tender benefits and proceeds due and owing under its Policy, Plaintiff has sustained damages as described herein.

---

[3] *See* TEX. BUS. & COM. CODE §17.505.

[4] *See* TEX. INS. CODE ANN. §541.154

[5] *See* 28 TEX. ADMIN. CODE §21.1 et. seq.

## V.  <u>COUNT ONE: BREACH OF CONTRACT</u>

5.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

5.2.    This is an action against Defendant for breach of a first party insurance contract, the Policy.[6] Plaintiff is the named insured under the Policy and the Policy was in full force and effect as to the Plaintiff and the Property at all times material to the facts as set forth herein.

5.3.    Plaintiff has performed all conditions to Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the Claim, mitigation of the damages to the Property, and temporary repairs to prevent further damage. Defendant has waived any and all other conditions.

5.4.    Defendant is required to compensate Plaintiff for all direct physical losses from a loss event under the terms of the Policy.

5.5.    Defendant's denial of coverage and refusal to pay the full amount of the claim is contrary to the terms of the Policy and Texas law and constitutes a breach of said contract of insurance causing further delay in restoring Plaintiff's Property to its pre-loss condition.

5.6.    As a direct and proximate result of Defendant's breach of said contract of insurance, Plaintiff has been damaged by having not been compensated for the damage sustained to the Property, which is owed under the terms of the Policy.

5.7.    Plaintiff has been and remains fully prepared to comply with all obligations pursuant to the Policy.

5.8.    As a direct and proximate result of Defendant's refusal to pay Plaintiff's Claim, Plaintiff has been required to retain the services of the undersigned attorneys. Plaintiff is

---

[6] *See* Exh. 1.

obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action, plus necessary costs.

5.9.    In the event that Plaintiff prevails in this action, Plaintiff is entitled to recover reasonable attorneys' fees and costs from Defendant pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.[7]

5.10.    All of the foregoing conduct of Defendant constitutes a breach of contract, which has resulted in damages to Plaintiffs.

## VI.    COUNT TWO: VIOLATIONS OF THE TEXAS INSURANCE CODE

6.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

6.2.    Defendant's acts, omissions, failures, and conduct that are described in this Petition violate provisions of Chapter 541 and Chapter 542 of the Texas Insurance Code[8] and are actionable pursuant to Section 541.151 of the Texas Insurance Code. In this respect, Defendant's violations include, without limitation:

    a)    Engaging in an unfair method of competition, or an unfair and deceptive act and practice in the business of insurance, to misrepresent the Policy by:

        i.    Making an untrue statement of material fact;[9]

        ii.    Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;[10]

        iii.    Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;[11] and,

---

[7] TEX. CIV. PRAC. & REM. CODE §38.001.

[8] TEX. INS. CODE §541 et. seq.

[9] See TEX. INS. CODE ANN. §541.061(1); See also 28 TEX. ADMIN. CODE §21.3.

[10] See TEX. INS. CODE ANN. §541.061(2).

[11] See TEX. INS. CODE ANN. §541.061(3).

iv.    Making a material misstatement of law.[12]

b)    Engaging in an unfair method of competition, or an unfair and deceptive act and practice in the business of insurance, with respect to the Claim, by:

i.    Misrepresenting a material fact or policy provision relating to the coverage at issue;[13]

ii.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim with respect to which the insurer's liability had become reasonably clear;[14]

iii.    Failing to promptly provide a reasonable explanation of the basis in the Policy, in relation to the facts and applicable law, for denial of the Claim and/or offer of a compromise settlement of the Claim;[15] and,

iv.    Refusing to pay the amounts duly owed regarding the Claim without conducting a reasonable investigation with respect to the Claim.[16]

6.3.    Accordingly, Plaintiff seeks herein actual damages, court costs, and reasonable and necessary attorneys' fees.[17] Because Defendant acted knowingly, Plaintiff seeks treble damages pursuant to Section 541.152(b) of the Texas Insurance Code.[18]

## VII.  COUNT THREE: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

7.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

7.2.    Plaintiff is a consumer under the Texas Deceptive Trade Practices Act (hereinafter, the "DTPA") because Plaintiff is a business consumer (as defined by the Act) who

---

[12] *See* TEX. INS. CODE ANN. §541.061(A)(1), (2), (3) & (4).

[13] *See* TEX. INS. CODE ANN. §541.060 (a)(1); *See also* 28 TEX. ADMIN. CODE §21.203(1).

[14] *See* TEX. INS. CODE ANN. §541.060 (a)(2)(A); *See also* 28 TEX. ADMIN. CODE §21.203(4).

[15] *See* TEX. INS. CODE ANN. §541.060 (a)(3).

[16] *See* TEX. INS. CODE ANN. §541.060 (a)(7); *See also* 28 TEX. ADMIN. CODE §21.203(15).

[17] TEX. INS. CODE §541.152(a)(1).

[18] TEX. INS. CODE §541.152(b).

acquired goods/services from Defendant by purchase and who has assets in the amount of $25 Million or less.[19]

    7.3.    By its acts, omissions, failures, and conduct that are described in this Petition, Defendant violated Section 17.46 et. seq. of the Texas Business & Commerce Code, commonly referred to as the DTPA. Particularly, Defendant violated the DTPA by engaging in false, misleading, or deceptive acts or practices that Plaintiff justifiably relied on to their detriment. In this respect, Defendant's violations include, without limitation:

    a)    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;[20]

    b)    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;[21]

    c)    Advertising goods or services with intent not to sell them as advertised[22] and representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;[23]

    d)    Failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed;[24] and,

    e)    Engaging in an unconscionable action or course of action, to Plaintiff's detriment, that took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.[25]

---

[19] TEX. BUS. & COM. CODE §17.45(4).

[20] See TEX. BUS. & COM. CODE §17.45(b)(5).

[21] See TEX. BUS. & COM. CODE §17.45(b)(7).

[22] See TEX. BUS. & COM. CODE §17.45(b)(10).

[23] See TEX. BUS. & COM. CODE §17.45(b)(12).

[24] See TEX. BUS. & COM. CODE §17.45(b)(24).

[25] See TEX. BUS. & COM. CODE §17.45(5); §17.50(a)(3).

7.4.    As described herein, Defendant represented to Plaintiff that the Policy and Defendant's adjusting and investigative services had characteristics or benefits that they did not have, which affords Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA.[26]

7.5.    All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages as set forth herein. Accordingly, Plaintiff seeks their actual damages, court costs, and reasonable and necessary attorneys' fees.[27]

7.6.    Additionally, because Defendant acted knowingly and intentionally, Plaintiff is entitled to recover treble damages under DTPA Section 17.50(b)(1).[28] Defendant acted knowingly because, at the time of the acts and practices complained of, Defendant had actual awareness of the falsity, deception, or unfairness of the acts or practices giving rise to Plaintiff's claim.[29] Further, Defendant acted intentionally because, at the time of the acts and practices complained of, Defendant had actual awareness of the falsity, deception, or unfairness of the act or practice and acted with a specific intent that Plaintiff act in detrimental reliance on the falsity or deception, or in detrimental ignorance of the unfairness.[30]

## VIII.  COUNT FOUR: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

8.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

---

[26] TEX. BUS. & COM. CODE §17.46(b)(5).

[27] TEX. BUS. & COM. CODE §17.50(d).

[28] TEX. BUS. & COM. CODE §17.50(b)(1).

[29] TEX. BUS. & COM. CODE §17.45(9).

[30] TEX. BUS. & COM. CODE §17.45(13).

8.2.    By its acts, omissions, failures, and conduct, Defendant has breached its common law duty of good faith and fair dealing.[31] Defendant had no reasonable basis for denying or delaying payment of Plaintiff's Claim, and Defendant knew or should have known that there was no reasonable basis for denying or delaying payment of Plaintiff's Claim.[32]

8.3.    By its acts, omissions, failures, and conduct, Defendant has also engaged in unfair and deceptive acts or practices in the business of insurance in violation of the Texas Administrative Code.[33]

8.4.    These common law and Administrative Code violations include, without limitation, the conduct described in this Petition, including:

a)    Engaging in false, misleading, and deceptive acts or practices in the business of insurance;

b)    Engaging in unfair claims settlement practices the business of insurance;[34]

c)    Misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;[35]

d)    Failing to acknowledge with reasonable promptness pertinent communications with respect to the Claim;[36]

e)    Failing to attempt in good faith to effectuate prompt, fair, and equitable settlement of the Claim submitted when liability under the Policy became reasonably clear;[37]

f)    Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;[38]

---

[31] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50-51 (Tex. 1997); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994); *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988).

[32] *Id.*

[33] TEX. ADMIN. CODE §21.203 et. seq.

[34] *Id.*

[35] TEX. ADMIN. CODE §21.203(1).

[36] TEX. ADMIN. CODE §21.203(2).

[37] TEX. ADMIN. CODE §21.203(4).

[38] TEX. ADMIN. CODE §21.203(9).

g)    Failing to affirm or deny coverage of a claim to a policyholder within a reasonable time;[39]

h)    Refusing to pay amounts due and owing on the Claim without conducting a reasonable investigation with respect to the Claim;[40] and,

i)    Failing to respond promptly to a request by a claimant for personal contact about review of the Claim.[41]

8.5.    Defendant knowingly breached its duty of good faith and fair dealing and engaged in unfair settlement practices with respect to Plaintiff's Claim, when Defendant's liability had become reasonably clear.[42]

8.6.    These acts, omissions, failures, and conduct of Defendant were committed knowingly and intentionally and are a proximate cause of Plaintiff's damages, as sought herein.

## IX.   <u>WAIVER AND ESTOPPEL</u>

9.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

9.2.    Defendant has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## X.   <u>DISCOVERY RULE</u>

10.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

10.2.    Plaintiff maintains that their causes of action as set forth herein are brought within the applicable Statute of Limitations as Defendant's breach of contract, breach of duty of good

---

[39] TEX. ADMIN. CODE §21.203(10).

[40] TEX. ADMIN. CODE §21.203(15).

[41] TEX. ADMIN. CODE §21.203(16).

[42] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997).

faith and fair dealing, and violations of the Texas Business and Commerce Code and Texas Insurance Code were not discovered by Plaintiff until on or after Defendant submitted its initial estimate to Plaintiff on December 23, 2020.

10.3.    However, in the alternative, and in an abundance of caution, Plaintiff pleads application of the discovery rule, because Plaintiff had no capacity to discover Defendant's initial breach of contract, breach of duty of good faith and fair dealing, and violations of the Texas Business and Commerce Code and Texas Insurance Code, even in the exercise of diligence, until same manifested following the submission of Defendant's initial estimate. Of course, this application of the discovery rule would not need to apply to the multitude of breaches that occurred thereafter, as set forth herein.

## XI.   NOTICE OF INTENT TO USE DISCOVERY

11.1.    Plaintiff gives notice of their intent to use documents and other tangible items produced in discovery against the party or parties producing same in all pretrial matters and trial of this Lawsuit.

## XII.   ECONOMIC AND ACTUAL DAMAGES

12.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

12.2.    The above-described acts, omissions, failures, and conduct of Defendant have caused Plaintiff's damages, which include, without limitation, the remaining costs to properly repair Plaintiff's Property and any investigative and engineering fees incurred therein. Plaintiff is entitled to recover their out-of-pocket damages, costs of mitigation, lost time, loss of use, and expectancy damages. Plaintiff is further entitled to recover consequential damages from Defendant's breach of its duty of good faith and fair dealing. As this is an action for bad faith

insurance practices, Plaintiff is also entitled to recover extracontractual damages for economic and personal injuries. Plaintiff is further entitled to recover the amount of their claim plus prejudgment interest, post-judgment interest and attorneys' fees. All the damages described herein are within the jurisdictional limits of the Court.[43]

## XIII.   ADDITIONAL DAMAGES

13.1.    Plaintiffs incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

13.2.    Defendant has "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Defendant's knowing and intentional misconduct, Plaintiff is entitled to additional damages and/or treble damages as authorized by the Texas Insurance Code[44] and Texas Deceptive Trade Practices Act.[45]

## XIV.   ATTORNEY FEES

14.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

14.2.    Plaintiff has retained Hair Shunnarah Trial Attorneys, LLC, to represent Plaintiff due to Defendant's actions.  Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs incurred, including all charges and costs of court, as well as all such fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Chapter 38 of the Texas

---

[43] *See* TEX. BUS. & COM. CODE §17.50(b)(1); TEX. BUS. & COM. CODE §17.50(b)(4); TEX. BUS. & COM. CODE §17.50(h); TEX. INS. CODE §541.152(a)(1); TEX. INS. CODE §541.152(a)(3); TEX. INS. CODE §541.152(b); TEX. INS. CODE §542.060(a) and TEX. INS. CODE §542.060(c).

[44] TEX. INS. CODE §541.152.

[45] TEX. BUS. & COM. CODE §17.50(b)(1).

Civil Practices and Remedies Code;[46] (b) Section 541.152 of the Texas Insurance Code;[47] (c) Section 17.50(d) of the Texas Deceptive Trade Practices Act;[48] and (d) common law.[49]

## XV.    JURY DEMAND

15.1.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

15.2.    Plaintiff hereby requests a trial by jury. Payment of the jury fee has been made at the time of this filing.

## XVI.    PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Bray Enterprises, LLC., respectfully prays that, Defendant, Mount Vernon Fire Insurance Company, A Member of United States Liability Insurance Group, be cited to appear and answer herein and upon a final hearing of the cause, judgment be entered for Plaintiff and against Defendant as follows:

a)    Economic, Actual, and Consequential damages suffered, as requested herein;

b)    Additional Damages as requested herein;

c)    Prejudgment and postjudgment interest at the maximum rate allowed by law as requested herein;

d)    Reasonable and necessary attorneys' fees, and costs of court, including additional contingent amounts in the event of an appellate proceeding as requested herein; and

e)    Such other and further relief to which Plaintiff may be entitled at law or in equity, whether pled or unpled.

---

[46] TEX. CIV. PRAC. & REM. CODE §38.001.

[47] TEX. INS. CODE §541.152(a)(1).

[48] TEX. BUS. & COM. CODE §17.50(d).

[49] *Nationwide Mut. Ins. v. Holmes*, 842 S.W.2d 335,341 (Tex. App.—San Antonio 1992, writ denied); *Baja Energy Inc. v. Ball*, 669 S.W.2d 836, 838-39 (Tex. App.—Eastland 1984, no writ*); Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799 (Tex.1974) (recognizing that attorney fees can be awarded under equity).

Respectfully submitted,

By: */s/ Sophia Johnson*

Sophia Johnson
State Bar No. 24103214
Email: johnson@hairshunnarah.com
**HAIR SHUNNARAH TRIAL ATTORNEYS, L.L.C.**
d/b/a INSURANCE CLAIM LAWYERS, INC.
d/b/a INSURANCE CLAIM HQ
3540 S. I-10 Service Road W, Suite 300
Metairie, LA 70001
Telephone: (504) 684-5200
Facsimile: (504) 613-6351

-and-

By: */s/ Michael A. Holmes*

Michael A. Holmes
State Bar No. 24083191
Email: michael@holmeslg.com
**HOLMES LAW GROUP, PLLC**
P.O. Box 38282
Dallas, TX 75238
Telephone: (214) 444-9533

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing instrument has been served upon all attorneys of record in accordance with the Federal Rules of Civil Procedure on this the 23rd day of January, 2023.

**<u>Via Electronic Service</u>**
Daniel S. Buechler
Email: dbuechler@thompsoncoe.com
John Wiggins
Email: jwiggins@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, LLP
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201

*Attorney for Defendant*

_/s/ Sophia Johnson_
Attorney for Plaintiff